IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUPREE LAMONT ADKINS,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT KERNAN, et al.,<br><br>Defendants. | No. 2:19-CV-0458-DMC-P<br><br><br><br>ORDER |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's complaint (ECF No. 1). Plaintiff alleges Defendants violated his rights under the Eighth Amendment and Fourteenth Amendment.

**I. SCREENING REQUIREMENT AND STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2).

/ / /

/ / /

1

The Federal Rules of Civil Procedure require complaints contain a "…short and plain statement of the claim showing that the pleader is entitled to relief." See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (quoting Fed. R. Civ. P. 8(a)(1)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal–Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and are afforded the benefit of any doubt. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572F.3d at 969.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as Defendants: (1) Scott Kernan (2) Deborah Blackwell (3) R. Neuschmid (3) Russell Douglas (4) M. Dernoncourt (5) M. McComas (6) Angela Sherman (7) L. Garcia (8) M. Doe (9) J. Lee (10) E. Arnold. See ECF No. 1, at 2, 4. Plaintiff alleges Defendants violated his Fourteenth Amendment rights by denying him the opportunity to call witnesses in an Administrative Segregation Unit (ASU) hearing and failing to appoint Plaintiff staff assistance at the same ASU hearing. Plaintiff alleges his own staff assistant was necessary for a fair hearing. Plaintiff also alleges Defendants violated his Fourteenth Amendment right to equal protection by discriminating against him when Defendants initially

2

placed him in ASU. Plaintiff states as a member of the Enhanced Out Patient (EOP) program, he is a protected class.

Plaintiff alleges Defendants violated his Eighth Amendment rights by failing to provide Plaintiff with adequate and proper medical and mental health care. Plaintiff alleges Defendants acted with deliberate indifference to his serious medical and mental health needs because they knew he was classified as EOP and they knew ASU does not offer the scheduled and consistent "therapeutic structured activities" he requires to remain mentally stable. Plaintiff alleges the California Department of Corrections and Rehabilitation ("CDCR") Mental Health Program Guide requires each EOP prisoner in ASU must be provided with a minimum ten hours per week of "structured therapeutic activities," a weekly case manager meeting, and Title 15 mandated out of cell time. Plaintiff claims in ASU he was not receiving the above detailed requirements. Additionally, Plaintiff alleges poor living conditions in ASU, stating they amounted to a serious deprivation of the "minimal civilized measures of life's necessities."

Plaintiff alleges the following deficient conditions:

1. The food is inadequate because it is not EOP food and it was poisoned.
2. The clothing provided is a "dreary" jumpsuit, boxer shorts, socks, and T-shirt. Thermal underwear was not provided. Additionally, all clothing can only be exchanged once a week for cleaning.
3. Shelter is inadequate because Plaintiff could not receive EOP "structured therapeutic activities," Plaintiff experienced sensory deprivation and constriction of space, and activity in isolation. There is also no regular outdoor exercise.
4. Sanitation is inadequate because Plaintiff was provided one bar of soap that makes his skin itch.
5. The provided "tooth powder" is rancid.
6. The provided toothbrush is three inches long.
7. Plaintiff alleges he couldn't receive his prescription contact lotion for itchy skin.
8. The safety measures are inadequate because Plaintiff alleges he suffered psychological distress.

/ / /

/ / /

3

## III. DISCUSSION

As currently set forth, the Court finds Plaintiff's complaint fails to state a cognizable claim under § 1983. Plaintiff alleges violations of his rights under the Eighth Amendment and the Fourteenth Amendment. Within each claim, it is difficult to decipher various sub-issues. For that reason, this Court identifies five primary claims alleged by Plaintiff in the complaint. Plaintiff alleges Defendants violated his Fourteenth Amendment rights by denying him witnesses and staff assistance at an ASU hearing, and further discriminating against him under the equal protection clause by reaching the decision to continue his occupancy in ASU. Plaintiff alleges Defendants violated his Eighth Amendment rights by denying him adequate mental health care while in ASU and by the inadequate living conditions in ASU.

### A. **Fourteenth Amendment Claims**

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). Due process protects against the deprivation of property where there is a legitimate claim of entitlement to the property. See Bd. of Regents, 408 U.S. at 577. Protected property interests are created, and their dimensions are defined, by existing rules that stem from an independent source – such as state law – and which secure certain benefits and support claims of entitlement to those benefits. See id.

Liberty interests can arise both from the Constitution and from state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question ". . . is within the normal limits or range of custody which the conviction has authorized the State to impose." Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405. Applying this standard, the Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner,

4

515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. See Sandin v. Connor, 515 U.S. 472, 481-84 (1995). In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84. Prisoners in California have a liberty interest in the procedures used in prison disciplinary hearings where a successful claim would not necessarily shorten the prisoner's sentence. See Ramirez v. Galaza, 334 F.3d 850, 853, 859 (9th Cir. 2003) (concluding that a due process challenge to a prison disciplinary hearing which did not result in the loss of good-time credits was cognizable under § 1983); see also Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (concluding that claims which did not seek earlier or immediate release from prison were cognizable under § 1983).

Where a prisoner alleges the deprivation of a liberty or property interest caused by the random and unauthorized action of a prison official, there is no claim cognizable under 42 U.S.C. § 1983 if the state provides an adequate post-deprivation remedy. See Zinermon v. Burch, 494 U.S. 113, 129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984). A state's post-deprivation remedy may be adequate even though it does not provide relief identical to that available under § 1983. See Hudson, 468 U.S. at 531 n.11. A due process claim is not barred, however, where the deprivation is foreseeable and the state can therefore be reasonably expected to make pre-deprivation process available. See Zinermon, 494 U.S. at 136-39. An available state common law tort claim procedure to recover the value of property is an adequate remedy. See id. at 128-29.

/ / /

/ / /

Finally, with respect to prison disciplinary proceedings, due process requires prison officials to provide the inmate with: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff, 418 U.S. at 563-70. Due process is satisfied where these minimum requirements have been met, see Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." Id. at 455-56. However, a due process claim challenging the loss of good-time credits as a result of an adverse prison disciplinary finding is not cognizable under § 1983 and must be raised by way of habeas corpus. See Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997).

### 1. Denial of Witnesses

"Administrative segregation" is a catch-all phrase for any form of non-punitive segregation. For example, prisoners may be segregated to protect them from other inmates, to protect other inmates from the segregated prisoner, or pending investigation of disciplinary charges, transfer, or re-classification. See Hewitt v. Helms, 459 U.S. 460, 468 (1983), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995). When a prisoner is placed in administrative segregation, prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversary review of the evidence justifying the decision to segregate the prisoner. See Hewitt, 459 U.S. at 476, abrogated in part on other grounds by Sandin, 515 U.S. 472 (1995); Mendoza v. Blodgett, 960 F.2d 1425, 1430 (9th Cir. 1992), abrogated in part on other grounds by Sandin, 515 U.S. 472 (1995); Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1986), abrogated in part on other grounds by Sandin, 515 U.S. 472 (1995). The Supreme Court has stated that five days is a reasonable time for the post-placement review. See Hewitt, 459 U.S. at 477.

The prisoner must receive some notice of the charges and be given an opportunity to respond to the charges. See id. at 476; Mendoza, 960 F.2d at 1430-31; Toussaint, 801 F.2d at 1100. The prisoner, however, is not entitled to "detailed written notice of charges, representation of counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." Toussaint, 801 F.2d at 1100-01 (citations omitted). Due process also "does not require disclosure of the identity of any person providing information leading to the placement of a prisoner in administrative segregation." Id. After the prisoner has been placed in administrative segregation, prison officials must periodically review the initial placement. See Hewitt, 459 U.S. at 477 n.9; Toussaint, 801 F.2d at 1101. Annual review of the placement is insufficient, see Toussaint, 801 F.2d at 1101, but a court may not impose a 90-day review period where prison officials have suggested a 120-day review period, see Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir. 1991).

It is unclear from the Complaint the type of hearing Plaintiff refers to where he was denied witnesses. However, it is reasonable to infer the hearing was an ASU post-placement review hearing from statements in Plaintiff's complaint, such as: ". . . I have no other disciplinary to warrant continued 'ASU'" and "[t]he following witnesses were not called . . . [and] would have ruled that CSP-Solano 'ASU' doesn't have 'structured therapeutic activities' . . . those witnesses would have reduced the hearing to lacking supporting facts." See ECF No. 1, at 7, 8.

Because an ASU post-placement review hearing does not allow prisoners the opportunity to present witnesses, Plaintiff's due process claim fails. See Toussaint, 801 F.2d at 1100-01. In ASU, Plaintiff does not have the right to call or present witnesses at a post-placement review hearing.

        2.        Denial of Staff Assistance

As mentioned above, although Plaintiff does not expressly state in his complaint the type of hearing for which he was denied staff assistance, it is reasonable to infer the hearing was an ASU post-placement review hearing. Under Plaintiff's claim of denied staff assistance, Plaintiff supports the probability the hearing was an ASU post-placement review with these

statements from the complaint: "witnesses . . . would have produced evidence that I'm not a threat and my placement in 'ASU' is not supported" and "I was placed in 'ASU' as a threat a staff assistant would have obtained evidence that I'm not a threat." See ECF No. 1, at 18, 19.

Because an ASU post-placement review hearing does not allow prisoners representation of counsel or counsel-substitute, Plaintiff's due process claim fails. See Toussaint, 801 F.2d at 1100-01. In ASU, Plaintiff does not have the right to a counsel-substitute, which in this case, would be the equivalent of a staff assistant to help Plaintiff prepare evidence for his ASU post-placement review hearing.

### 3. Equal Protection

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Prisoners are protected from invidious discrimination based on race. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Racial segregation is unconstitutional within prisons save for the necessities of prison security and discipline. See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam). Prisoners are also protected from intentional discrimination on the basis of their religion. See Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997). Equal protection claims are not necessarily limited to racial and religious discrimination. See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class) see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made); Hightower v. Schwarzenegger, 2007 WL 732555 (E.D. Cal. March 19, 2008).[1]

/ / /

/ / /

---

[1] **Error! Main Document Only.**Strict scrutiny applies to equal protection claims alleging race-based or religious discrimination (i.e., where the plaintiff is member of a "protected class"); minimal scrutiny applies to all other equal protection claims. See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001).

In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

Here, Plaintiff fails to allege sufficient facts that Defendants' conduct did not relate to a legitimate penological purpose. Plaintiff outlines in his complaint the reasons each Defendant gave for his continued placement in ASU, for example: Defendant Deborah Blackwell states Plaintiff is a threat to the safety of self or others, jeopardizes the integrity of an investigation, and endangers institution security; Defendant M. Doe states Plaintiff remains a threat to safety and security; Defendant Russell Douglas states Plaintiff presents an immediate threat to the safety of self and others. See ECF No. 1, at 7-10. Because Plaintiff indicates in his own complaint that each Defendant acted based on legitimate penological purposes for his continued placement in ASU, Plaintiff's Fourteenth Amendment equal protection claim cannot pass screening.

**B.     Eighth Amendment Claims**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when

two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

        1.      Medical Care

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

///

1 | Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

The Court finds Plaintiff has alleged sufficient facts to support an Eighth Amendment claim that Defendants acted with deliberate indifference to Plaintiff's serious mental health needs. Plaintiff alleges Defendants knew that he was classified EOP and Defendants knew EOP requirements were not provided in ASU. Plaintiff alleges the result of the ASU post-placement hearing to continue his occupancy in ASU, while that ASU does not provide Plaintiff's EOP required activities, was detrimental to his mental health. Plaintiff states Defendants knew his mental condition was deteriorating and the prolonged absence of his "structured therapeutic activities," among other EOP daily and weekly requirements, caused Plaintiff's condition to result in further significant injury. Because Defendants acted with deliberate indifference to Plaintiff's mental health needs by continuing his stay in ASU while simultaneously not providing him the required EOP activities while in ASU, Plaintiff's Eighth Amendment claim passes screening.

2. Living Conditions

"Extreme deprivations are required to make out an Eighth Amendment conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992). "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotation marks and citations omitted). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).

///
///
///

11

####### i. Food

"The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993); see also Foster v. Runnels, 554 F.3d 807, 812-13, 813 n.2 (9th Cir. 2009); Johnson v. Lewis, 217 F.3d 726, 732 (9th Cir. 2000); Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." LeMaire, 12 F.3d at 1456 (citation and internal quotation marks omitted); see also Foster, 554 F.3d at 813 n.2.

Plaintiff's claim that receiving non-EOP food violates the Eighth Amendment fails because Plaintiff has not alleged any facts to support that non-EOP food is inadequate to maintain health. However, Plaintiff's claim that the food is poisoned does pass screening, because food tainted with a fatal substance will not adequately maintain health in any respect.

####### ii. Clothing

"The denial of adequate clothing can inflict pain under the Eighth Amendment." Walker v. Sumner, 14 F.3d 1415, 1421 (9th Cir. 1994) (citing Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982)), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995). Plaintiff's claim fails to allege facts to support an Eighth Amendment claim that Plaintiff's provided clothing was inadequate and inflicted pain. Although Plaintiff might not prefer the type of clothing he received, or the weekly wash rate, Plaintiff has not alleged facts stating the provided clothes violate idealistic concepts of humanity and decency.

####### iii. Shelter

"Deprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation." Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996) (citing Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)), amended by 135 F.3d 1318 (9th Cir. 1998); see also Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Richardson v. Runnels, 594 F.3d 666, 672 (9th Cir. 2010); Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005); Lopez v. Smith, 203 F.3d 1122, 1133 (9th Cir. 2000) (en banc); Allen v. Sakai, 48 F.3d

1082, 1087 (9th Cir. 1995); Allen v. City of Honolulu, 39 F.3d 936, 938-39 (9th Cir. 1994); LeMaire v. Maass, 12 F.3d 1444, 1457-58 (9th Cir. 1993); Toussaint v. Yockey, 722 F.2d 1490, 1492-93 (9th Cir. 1984). "[A] temporary denial of outdoor exercise with no medical effects [, however,] is not a substantial deprivation." May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997); see also Noble v. Adams, 636 F.3d 525, 531 (9th Cir. 2011) (concluding prison officials were entitled to qualified immunity from § 1983 claim that post-riot lockdown of prison resulted in denial of Eighth amendment right to exercise); Norwood v. Vance, 591 F.3d 1062, 1070 (9th Cir. 2010) (recognizing that temporary denial of outdoor exercise with no medical effects is not a substantial deprivation); Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998). But see Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994) (in-cell confinement for almost twenty-four hours a day and forty-five minutes of outside exercise per week for a six-week period is an objectively serious deprivation). Prison officials may restrict outdoor exercise on the basis of weather, unusual circumstances, or disciplinary needs. See Spain, 600 F.2d at 199. "The cost or inconvenience of providing adequate [exercise] facilities, [however,] is not a defense to the imposition of a cruel punishment." Id. at 200.

Here, Plaintiff alleges the shelter is inadequate because there is not regular outdoor exercise. This claim fails to pass screening because Plaintiff is not alleging a total deprivation of outdoor exercise, but rather just that he does not receive the exercise on a regular schedule. Without any medical consequences or effects, a temporary denial of outdoor exercise is not substantial enough to give rise to an Eighth Amendment claim. See May, 109 F.3d at 565. Because Plaintiff does not allege facts establishing he experienced medical effects from the lack of regular outdoor exercise, Plaintiff's claim cannot pass screening.

Further, Plaintiff alleges the shelter is inadequate because he experienced sensory deprivation, constriction of space, and activity in isolation. Plaintiff's allegations of the consequences he experienced from inadequate shelter are vague and conclusory. This Court is unable to engage in a substantive analysis to determine if sufficient facts exist, as to each of Plaintiff's experiences, for the claims to pass screening. In amending this complaint, Plaintiff should allege facts establishing how his senses were deprived, what caused the constriction of

13

space while in ASU, and how frequent or substantial was the alleged isolation.

Lastly, Plaintiff's allegation that the shelter is inadequate because he does not receive EOP "structured therapeutic activities" is not a living condition issue under § 1983. Rather, the "structured therapeutic activities" specifically belong with the EOP program, and while standard ASU accommodates for EOP, it does not specifically require such activities as part of its "shelter."

### iv. Sanitation

"[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." Anderson v. Cty. of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995); see also Johnson v. Lewis, 217 F.3d 726, 731-32 (9th Cir. 2000); Hoptowit v. Spellman, 753 F.2d 779, 783 (9th Cir. 1985). Plaintiff claims the prison-provided soap makes his skin itchy and is therefore a sanitation issue; however, sanitation rules under § 1983 refer to institutional sanitation and not personal sanitation. In amending the complaint, Plaintiff should be advised that soap is a personal hygiene product and not a living condition under sanitation. See below.

### v. Personal Hygiene

"Indigent inmates have the right to personal hygiene supplies such as toothbrushes and soap." Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998). Plaintiff's claim that the prison-provided soap irritates his skin and thus violates the Eighth Amendment passes screening. The inability to achieve personal cleanliness without a painful skin reaction violates concepts of humanity and decency. The continued utilization of a soap that causes itching upon contact with the skin is equivalent to not receiving soap at all.

Further, Plaintiff's claim that the prison- provided tooth powder is rancid and thus violates the Eighth Amendment passes screening. Plaintiff's alleged inability to achieve proper dental hygiene and cleanliness due to the rancidness of the tooth powder is equivalent to Plaintiff not being provided tooth powder at all. The lack of a personal hygiene supply like toothpowder violates the Eighth Amendment standards of humanity and decency.

Lastly, Plaintiff's claim that the prison-provided toothbrush, being approximately

three inches long, violates the Eight Amendment does not pass screening. Although Plaintiff might not agree with the size of the toothbrush, Plaintiff was still provided a working and adequate toothbrush in order to achieve proper dental hygiene.

       vi.  <u>Lotion</u>

   It is unclear from Plaintiff's complaint whether the lotion he could not receive was a prescription lotion specifically to address his itchy skin or if it was a standard topical lotion. If the lotion was a prescription from a medical professional, then the denial of the prescription could potentially constitute a violation of the Eighth Amendment, not in the context of living conditions, but under inadequate medical care. Plaintiff will be provided an opportunity to amend to clarify this allegation. In amending the complaint, Plaintiff should allege facts specifying the type of lotion he was deprived and how a specific Defendant was either deliberately indifferent to his medical needs or if a specific Defendant acted for the purpose of inflicting harm by not allowing him to receive the lotion.

    3.  <u>Safety</u>

   Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. <u>See</u> <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1250-51 (9th Cir. 1982); <u>Farmer</u>, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. <u>See</u> <u>Farmer</u>, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. <u>See</u> <u>Wallis v. Baldwin</u>, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. <u>See</u> <u>Farmer</u>, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. <u>See</u> <u>Berg v. Kincheloe</u>, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. <u>See</u> <u>Farmer</u>, 511 U.S. at 844.

Plaintiff's claim that the safety measures are inadequate because he suffered psychological distress fails to pass screening. Plaintiff makes a vague and conclusory statement without alleging facts demonstrating how the prison's safety measures caused him psychological distress. Because Plaintiff has not established any defendant's objective or subjective liability, and Plaintiff has not alleged facts supporting the inadequacy of the safety measures, Plaintiff's Eighth Amendment claim fails.

### IV. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Therefore, if plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefore, the court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

///

///

///

Accordingly, IT IS HEREBY ORDERED that plaintiff may file a first amended complaint within 30 days of the date of service of this order.

Dated: June 24, 2019

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE