IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUPREE LAMONT ADKINS,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT KERNAN, et al.,<br><br>Defendants. | No. 2:19-CV-0458-JAM-DMC-P<br><br><br><u>ORDER</u> |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983. Before the Court is Plaintiff's fourth amended complaint. ECF No. 44.

The Court must screen complaints from prisoners seeking relief against a governmental entity, officer, or employee. <u>See</u> 28 U.S.C. § 1915A(a). The court must identify any cognizable claims and dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. <u>See</u> 28 U.S.C. § 1915A(b)(1), (2).

A complaint must contain a short and plain statement of the claim that a plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint must provide "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S.

662, 678 (2009). To survive screening, a plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Id. at 678–79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Plaintiffs must demonstrate that each defendant personally participated in the deprivation of the plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). If the allegations "do not permit the court to infer more than the mere possibility of misconduct," the complaint does not state a claim. Iqbal, 556 U.S. at 679. The complaint need not identify "a precise legal theory." Kobold v. Good Samaritan Reg'l Med. Ctr., 832 F.3d 1024, 1038 (9th Cir. 2016).

The Court must construe a pro se litigant's complaint liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012). However, "'a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)). The Court may dismiss a pro se litigant's complaint "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1208 (9th Cir. 2017).

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff brings suit against thirteen defendants. ECF No. 44, pgs. 2-5. Plaintiff names thirteen employees of the California Department of Corrections and Rehabilitation (CDCR): (1) Scott Kernan, former Secretary of CDCR; (2) Deborah Blackwell, a correctional lieutenant at California State Prison, Solano (CSP-Solano); (3) R. Neuschmid, warden of CSP-Solano; (4) Russell Douglas, a correctional lieutenant at CSP-Solano; (5) M. Dernoncourt, a correctional captain at CSP-Solano; (6) M. McComas, a correctional counselor at CSP-Solano; (7) Angela Sherman, a psychologist at CSP-Solano; (8) J. Lee, a correctional officer at CSP-Solano; (9) L. Garcia, a correctional counselor at CSP-Solano; (10) E. Arnold, a correctional officer at CSP Solano; (11) Ms. M. Doe,[1] a correctional officer at CSP-Solano; (12) J. Gastelo, warden of California Men's Colony (CMC); and (13) McQuaid, a correctional officer at CMC. Id.

---

[1] "Ms. M. Doe" is, according to Plaintiff, a Jane Doe who's first initial is "M."

Plaintiff contends that Defendants violated his Fourteenth Amendment due process rights by denying him the chance to call witnesses and have other assistance during an Administrative Segregation Unit (ASU) hearing. Id. at 7. Plaintiff also alleges that Defendants falsified the reasons for assigning him to the ASU, denied him proper notice of the reasons for assignment to the ASU, and disregarded his disabilities. See id. at 6–15.

Continuing his Fourteenth Amendment claims, Plaintiff alleges that Denied him equal protection. Id. at 16–22. He contends that he is a member of a protected class, ostensibly because he participates in the Enhanced Outpatient Program (EOP) that provides intensive healthcare to inmates with mental impairments. See id. It appears that Plaintiff argues that Defendants violated his equal protection rights in transferring him to ASU without a legitimate penological interest for doing so. See id.

Plaintiff, finally, alleges a few Eighth Amendment claims related to medical care and conditions of confinement. Id. at 23–41. In sum, he asserts that Defendants denied him adequate care and were deliberately indifferent in assigning him to ASU because they totally deprived him of exercise and other "structured therapeutic activities." Id. Plaintiff, for instance, identifies several instances in which Defendants allegedly denied exercise for multiple days at a time. Id.

## II. DISCUSSION

The Court finds that Plaintiff's equal protection claim and Eighth Amendment claims are cognizable. However, the Court finds Plaintiff's due process claim defective.

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).

///

///

///

1          Liberty interests can arise both from the Constitution and from state law.  See
2   Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976);
3   Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993).  In determining whether the Constitution
4   itself protects a liberty interest, the court should consider whether the practice in question ". . . is
5   within the normal limits or range of custody which the conviction has authorized the State to
6   impose."  Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405.  Applying this standard, the
7   Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time
8   credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner,
9   515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308,
10  323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in
11  remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

12         In determining whether state law confers a liberty interest, the Supreme Court has
13  adopted an approach in which the existence of a liberty interest is determined by focusing on the
14  nature of the deprivation.  See Sandin v. Connor, 515 U.S. 472, 481-84 (1995).  In doing so, the
15  Court has held that state law creates a liberty interest deserving of protection only where the
16  deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the
17  sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the
18  ordinary incidents of prison life."  Id. at 483-84.  Prisoners in California have a liberty interest in
19  the procedures used in prison disciplinary hearings where a successful claim would not
20  necessarily shorten the prisoner's sentence.  See Ramirez v. Galaza, 334 F.3d 850, 853, 859 (9th
21  Cir. 2003) (concluding that a due process challenge to a prison disciplinary hearing which did not
22  result in the loss of good-time credits was cognizable under § 1983); see also Wilkinson v.
23  Dotson, 544 U.S. 74, 82 (2005) (concluding that claims which did not seek earlier or immediate
24  release from prison were cognizable under § 1983).

25         "Administrative segregation" is a catch-all phrase for any form of non-punitive
26  segregation.  For example, prisoners may be segregated to protect them from other inmates, to
27  protect other inmates from the segregated prisoner, or pending investigation of disciplinary charges,
28  transfer, or re-classification.  See Hewitt v. Helms, 459 U.S. 460, 468 (1983), abrogated in part on

1 other grounds by Sandin v. Connor, 515 U.S. 472 (1995).  When a prisoner is placed in
2 administrative segregation, prison officials must, within a reasonable time after the prisoner's
3 placement, conduct an informal, non-adversary review of the evidence justifying the decision to
4 segregate the prisoner.  See Hewitt, 459 U.S. at 476, abrogated in part on other grounds by Sandin,
5 515 U.S. 472 (1995); Mendoza v. Blodgett, 960 F.2d 1425, 1430 (9th Cir. 1992), abrogated in part
6 on other grounds by Sandin, 515 U.S. 472 (1995); Toussaint v. McCarthy, 801 F.2d 1080, 1100
7 (9th Cir. 1986), abrogated in part on other grounds by Sandin, 515 U.S. 472 (1995).  The Supreme
8 Court has stated that five days is a reasonable time for the post-placement review.  See Hewitt, 459
9 U.S. at 477.

10 The prisoner must receive some notice of the charges and be given an opportunity
11 to respond to the charges.  See id. at 476; Mendoza, 960 F.2d at 1430-31; Toussaint, 801 F.2d at
12 1100.  The prisoner, however, is not entitled to "detailed written notice of charges, representation
13 of counsel or counsel-substitute, an opportunity to present witnesses, or a written decision
14 describing the reasons for placing the prisoner in administrative segregation."  Toussaint, 801 F.2d
15 at 1100-01 (citations omitted).  Due process also "does not require disclosure of the identity of any
16 person providing information leading to the placement of a prisoner in administrative segregation."
17 Id.  After the prisoner has been placed in administrative segregation, prison officials must
18 periodically review the initial placement.  See Hewitt, 459 U.S. at 477 n.9; Toussaint, 801 F.2d at
19 1101.  Annual review of the placement is insufficient, see Toussaint, 801 F.2d at 1101, but a court
20 may not impose a 90-day review period where prison officials have suggested a 120-day review
21 period, see Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir. 1991).

22 It appears clear that Plaintiff is referring to an ASU post-placement review hearing.
23 Because as ASU post-placement review hearing does not allow prisoners the opportunity to present
24 witnesses, Plaintiff's due process claim fails.  See Toussaint, 801 F.2d at 1100-01.  In ASU, Plaintiff
25 does not have the right to call or present witnesses at a post-placement review hearing.

26 Additionally, because an ASU post-placement review hearing does not allow
27 prisoners representation of counsel or counsel-substitute, Plaintiff's due process claim fails.  See
28 Toussaint, 801 F.2d at 1100-01.

## IV. CONCLUSION

Plaintiff's equal protection claim and various Eighth Amendment claims are cognizable. A service order will be issued as to those claims. However, because it does not appear possible that the deficiencies identified in Plaintiff's due process claim can be cured by amending the complaint, no further leave to amend should be granted.

Based on the foregoing, the undersigned recommends that Plaintiff's due process claim be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 2, 2022

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE