IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUPREE LAMONT ADKINS,<br><br>Plaintiff,<br><br>v.<br><br>DEBORAH BLACKWELL, et al.,<br><br>Defendants. | No. 2:19-CV-0458-DMC-P<br><br><br><br>ORDER |

    Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c).

    Pending before the Court is Defendants' motion for summary adjudication arguing failure to exhaust administrative remedies prior to filing suit as to some, but not all, claims. See ECF No. 119. Plaintiff has filed an opposition. See ECF No. 133. Defendants have filed a reply. See ECF No. 139. Also before the Court is Plaintiff's motion for leave to file a sur-reply brief.[1] See ECF No. 141. With his motion, Plaintiff filed a proposed sur-reply brief. See ECF No. 142. Defendants do not object to Plaintiff's request to file a sur-reply, and the

---

[1] Plaintiff's motions to disqualify defense counsel and for sanctions, ECF Nos. 144 and 145, will be addressed by separate order.

1

request will be granted. Plaintiff's sur-reply, as well as Defendants' response thereto, ECF No. 143, will be considered.

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than

simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

### I. PLANITIFF'S ALLEGATIONS

This action proceeds on Plaintiff's verified fifth amended complaint. See ECF No. 79. Plaintiff brings suit against twelve defendants. ECF No. 79 at 2-4. Plaintiff names twelve defendants: (1) Deborah Blackwell, a correctional lieutenant at California State Prison, Solano (CSP-Solano); (2) R. Neuschmid, warden of CSP Solano; (3) Russell Douglas, a correctional lieutenant at CSP-Solano; (4) M. Dernoncourt, a correctional captain at CSP-Solano; (5) M. McComas, a correctional counselor at CSP-Solano; (6) Angela Sherman, a psychologist at CSP-Solano; (7) M. Fergoso, a correctional officer at CSP-Solano; (8) J. Lee, a correctional officer at CSP-Solano; (9) L. Garcia, a correctional counselor at CSP-Solano; (10) E. Arnold, a correctional officer at CSP-Solano who held the rank of Associate Warden; (11) J. Gastelo, warden of

California Men's Colony (CMC); (12) McQuaid, a correctional officer at CMC; and (13) Scott Kernan, the former Secretary of the California department of Corrections and Rehabilitation.[2] See ECF No. 79, pgs. 2-4. The Court has clarified that this action proceeds against the Defendants in their individual capacities. See ECF No. 108.

Plaintiff brings four claims. See ECF No. 79, pgs. 6-34. Claim I alleges denial of equal protection in violation of the Fourteenth Amendment. See id. at 6. Claim II alleges deliberate indifference to Plaintiff's serious mental health needs in violation of the Eighth Amendment. See id. at 15. Claims III and IV allege deliberate indifference to serious medical needs and deprivation of basic necessities in violation of the Eighth Amendment. See id. at 24.

For Claim I, Plaintiff contends that he is part of a protected class because he is enrolled in the Enhanced Outpatient Program (EOP), which provides intensive outpatient medical care. See id. at 6. Plaintiff claims that Defendants violated his equal protection rights in transferring him to the Administrative Segregation Unit (ASU) without a legitimate penological interest for doing so, which resulted in Plaintiff being denied EOP programming. See id. at 6-14.

For Claim II, Plaintiff alleges Eighth Amendment claims related to medical care and conditions of confinement. See id. at 22-24. In sum, Plaintiff asserts that Defendants denied him adequate care and were deliberately indifferent in assigning him to ASU because they were unable to treat his serious mental health needs and did not allow him to take structured therapeutic activities. See id. at 23.

For Claims III and IV, Plaintiff alleges Defendants acted with deliberate indifference in denying Plaintiff his prescription for ointment to treat his scalp. See id. at 24. The denial of treatment caused Plaintiff to suffer from an itchy scalp that would blister. See id. The blisters would pop, leaving blood and pus in Plaintiff's bedding. See id. Plaintiff also alleges that he suffered from elevated blood pressure and reiterates his second claim. See id. at 25-27. Finally, Plaintiff alleges that he was given itchy soap and defective toothpowder and not consistently fed. See id. at 32.

---

[2] Scott Kernan has been dismissed from the action for failure to state a claim. See ECF No. 108.

## II. THE PARTIES' EVIDENCE

A. **Defendants' Evidence**

Defendants' motion for summary adjudication is supported by the following: (1) a statement of undisputed material facts, see ECF No. 119-2; (2) the declaration of S. Gates, the Chief of the Health Care Correspondence and Appeals Branch (HCCAB) of California Correctional Health Care Services (CCHCS), and attached exhibits, see ECF No. 119-4; (3) the declaration of Howard E. Moseley, the Associate Director of the Office of Appeals (OOA), and attached exhibits, see ECF No. 119-5; and (4) the declaration of Saul Torres, an Appeals Coordinator at CSP-Solano, and attached exhibits, see ECF No. 119-6.

Defendants' statement of undisputed material fact lists 111 facts which Defendants assert are undisputed. See ECF No. 119-2. The first 43 of these are facts alleged in the complaint which Defendants do not dispute. See id. at 2-7.

Next, Defendants outline the following evidence relating to the health care grievance process in general:

>   44.   Since August 1, 2008, health care grievances have been processed by CCHCS under the Office of the Federal Receive appointed in the Plata v. Newsom class action. See Gates declaration, ¶ 3.
>
>   45.   HCCAB receives and reviews all grievances attempted for the final level of review. See Gates declaration, ¶ 3.
>
>   46.   All levels of health care grievances are tracked through a computer database. See Gates declaration, ¶ 4.
>
>   * * *
>
>   52.   CSP-Solano has a health care grievance process available to inmates. See Gates declaration, ¶ 11.
>
>   53.   Between the date Plaintiff was first transferred to CSP-Solano (August 24, 2017) and the date Plaintiff filed his original complaint (March 14, 2019), Plaintiff filed seven health care grievances. See Gates declaration, ¶ 11.

ECF No. 119-2, pgs. 7-9.

///

///

///

Defendants then outline their evidence related to Plaintiff's seven health care grievances:

### First Grievance – Log No. SOL-HC-17000111

54. Plaintiff's first health care grievance was received at CMC on October 12, 2017, and alleged that, despite his requests, Plaintiff never received his hypertension medication while at CMC. See Gates declaration, ¶ 12.

55. This grievance does not mention Dr. Sherman, deliberate indifference, or any of Plaintiff's current allegations against Dr. Sherman. See Gates declaration, ¶ 12.

### Second Grievance – Log No. CMC-HC-17000319

56. Plaintiff's second health care grievance was received at CMC on November 30, 2017, and alleged that Dr. Wechsler failed to provide confidential assessments in private. See Gates declaration, ¶ 13.

57. This grievance does not mention Dr. Sherman, deliberate indifference, or any of Plaintiff's current allegations against Dr. Sherman. See Gates declaration, ¶ 13.

### Third Grievance – Log No. CMC-HC-18000493

58. Plaintiff's third health care grievance was received at CMC on January 30, 2018, and alleged that his health records were deleted from October 12, 2017, and October 13, 2017. See Gates declaration, ¶ 14.

59. This grievance does not mention Dr. Sherman or identify her through her position as a psychologist. See Gates declaration, ¶ 14.

60. In this grievance, Plaintiff requested copies of the deleted records concerning a nurse referral to a non-party psychologist, Dr. Faggianelli. See Gates declaration, ¶ 14.

### Fourth Grievance – Log No. CMC-HC-18001050

61. Plaintiff's fourth health care grievance was received at California State Prison – Corcoran on July 25, 2018, and alleged that Plaintiff could not receive his treatment plan; more specifically, Plaintiff claims that he did not receive enough staff assistance in drafting his inmate grievances. See Gates declaration, ¶ 15.

62. This grievance did not mention Dr. Sherman, deliberate indifference, false clinical comments, or itchy soap and rancid tooth powder. See Gates declaration, ¶ 15.

///
///
///

Fifth Grievance – Log No. SATF-HC-18001905

63. Plaintiff's fifth health care grievance was received at the California Substance Abuse Treatment Facility on September 21, 2018, and alleged that Plaintiff spoke with an unidentified mental health clinician at which time Plaintiff stated that he wanted to kill his cellmate; Plaintiff further alleged that upon returning to his cell he punched his cellmate causing Plaintiff's hand to swell; Plaintiff threatened to "keep fucking up [his] cellie." See Gates declaration, ¶ 16.

64. This grievance did not mention Dr. Sherman or identify any medical professionals by name. See Gates declaration, ¶ 16.

65. This grievance did not assert any allegations concerning false clinician comments, itchy soap, or rancid tooth powder. See Gates declaration, ¶ 16.

Sixth Grievance – Log No. COR-HC-18001609

66. Plaintiff's sixth health care grievance was received at California State Prison – Corcoran (CSP-Corcoran) on October 17, 2018, and alleged that Plaintiff was denied his blood pressure medication; Plaintiff requested an investigation. See Gates declaration, ¶ 17.

67. This grievance did not mention Dr. Sherman, false clinician comments, or itchy soap and rancid tooth powder. See Gates declaration, ¶ 17.

68. This grievance arose out of events which allegedly occurred at CSP-Corcoran. See Gates declaration, ¶ 17.

Seventh Grievance – Log No. CMF-HC-19000355

69. Plaintiff's seventh health care grievance was received at CMF on March 8, 2019, and alleged that Plaintiff lacked access to staff assistance to the appeals process and case manager meetings; more specifically, Plaintiff claims that he received a rules violation report because he did not have sufficient staff assistance; Plaintiff also requested single-cell status. See Gates declaration, ¶ 18.

70. This grievance did not mention Dr. Sherman, deliberate indifference, false clinician comments, or itchy soap and rancid tooth powder. See Gates declaration, ¶ 18.

ECF No. 119-2, pgs. 9-12.

Next, Defendants outline the following facts covering the process for grievances not related to health care:

71. In 2019 and prior, California Department of Corrections and Rehabilitation (CDCR) used a multi-level grievance process. See Torres declaration, ¶ 2

///

72. The process consisted of three levels of review, concluding with a third and final level appeal to the CDCR Office of Appeals. See Torres declaration, ¶ 2.

73. In 2019 and prior, the CSP-Solano appeals office was responsible for screening, logging, and routing firs- and second-level grievances submitted by inmates at the institution. See Torres declaration, ¶ 3.

74. The appeals office also monitored the final disposition of non-health care related grievances. See Torres declaration, ¶ 3.

* * *

76. In the regular scope of business, CSP-Solano keeps an electronic record of each inmate appeal that has proceeded through the first and second levels of review, as well as those screened out for procedural deficiencies. See Torres declaration, ¶ 4.

* * *

78. Any grievance which proceeds to the first or second level of review or is screened out is assigned a log number by the institution where the grievance originates. See Torres declaration, ¶ 6.

* * *

81. Plaintiff submitted five grievances which have been identified as potentially relevant to Plaintiff's claims in this case. See Torres declaration, ¶ 9.

ECF No. 119-2, pgs. 12-13.

According to Defendants, the following facts are undisputed as to Plaintiff's five grievances not related to health care issues:

<u>First Grievance – Log No. CSP-S-17-02872</u>

82. In this grievance, Plaintiff alleged that Defendant Blackwell inappropriately housed Plaintiff in the CSP-Solano Administrative Segregation Unit in violation of Plaintiff's rights as outlined in the <u>Coleman v. Brown</u> settlement; Plaintiff also contended that this placement was adverse because CSP-Solano was not designated to house inmates at the EOP level of care. See Torres declaration, ¶ 10; Mosely declaration, ¶ 10.

83. This grievance was received at the second level on December 6, 2017, and denied on January 16, 2018. See Torres declaration, ¶ 10.

///

///

Second Grievance – Log Nos. CSP-18-00315 and CMC-18-00734

84. In this grievance, Plaintiff alleged that Defendant Douglas and Captain Dernoncourt acted with deliberate indifference to Plaintiff's serious medical needs by housing Plaintiff in the Administrative Segregation Unit on October 11, 2017; Plaintiff requested an order preventing him from being housed at CSP-Solano. See Torres declaration, ¶ 11; Moseley declaration, ¶ 11.

85. This grievance was received at the second level on April 25, 2017, and denied on June 6, 2018. See Torres declaration, ¶ 11.

Third Grievance – Log Nos. CSP-S-18-00626 and CMC-E-18-00695

86. In this grievance, Plaintiff alleged that, on February 1, 2018, Defendants Kernan, Neuschmid, Lee, and Dernoncourt were deliberately indifferent to his serious medical needs due to his status as an EOP inmate; Plaintiff further alleged that because CSP-Solano was not a designated EOP hub, he was discriminated against and denied access to an Administrative Segregation unit in an EOP hub facility; this grievance was submitted on February 21, 2018. See Torres declaration, ¶ 12.

87. This grievance was screened out at the second level as procedurally deficient on March 12, 2018. See Torres declaration, ¶ 12.

88. Ultimately, this grievance was cancelled as duplicative of log nos. CSP-S-17-02872 (first non-health care grievance) and CSP-S-18-00315 (second non-health care grievance). See Torres declaration, ¶ 12.

Fourth Grievance – Log No. CSP-S-18-01306

89. This grievance consists of Plaintiff's appeals of the handling of prior grievances. See Torres declaration, ¶ 13.

90. This grievance was received at the second level on May 25, 2018, and granted in part on June 18, 2018. See Torres declaration, ¶ 13.

91. More specifically, the fourth grievance was granted to the extent it was concluded that log no. CSP-S-18-00626 had been cancelled in error and was eligible for further review. See Torres declaration, ¶ 14.

Fifth Grievance – Log No. CSP-S-17-02574

92. In this grievance, Plaintiff alleged that psychologist, Sherman violated his rights under the Coleman v. Brown class action case by making false statements concerning Plaintiff's mental health status and cognitive ability. See Torres declaration, ¶ 14.

93. This grievance was screened out and rejected at the first level for failing to state sufficient facts, requesting a remedy beyond the scope of the appeal process, and failing to submit a staff complaint against medical staff using the health care grievance process. See Torres declaration, ¶ 14.

///

> 94. This determination was not appealed to the second level. See Torres declaration, ¶ 14.

ECF No. 119-2, pgs. 13-16.

### B. Plaintiff's Evidence

Plaintiff's opposition consists of a single 395-page filing. See ECF No. 133. The opposition brief is verified. See id. Included with the brief is a separate statement of disputed facts in which Plaintiff admits some and challenges others of the facts outlined by Defendants as undisputed. See id. at 26-76. Plaintiff also submits his own declaration. See id. at 77-94. Attached to Plaintiff's brief and declaration are exhibits marked A-Z and AA-FF. See id. at 97-395. In his sur-reply brief, Plaintiff reiterates his argument that Defendants should be equitably estopped from asserting the lack of exhaustion because they "committed misconduct" and circumvented prison procedures regarding staff complaints. See ECF No. 142. The gravamen of Plaintiff's contention is that Defendants misrepresented the facts which resulted in Plaintiff's placement in administrative segregation at CSP-Solano. See id. Attached to Plaintiff's sur-reply as Exhibits A and B are two "Classification Committee Chronos." See id. at 4-16.

### III. DISCUSSION

In their motion for summary adjudication, Defendants concede that Plaintiff "exhausted one Eighth Amendment deliberate indifference claim against Defendants Blackwell, Douglas, and Dernoncourt for housing him at the Administrative Segregation Unit (ASU) at California State Prison-Solano (CSP-Solano)." Id. at 5. Defendants argue that they are entitled to judgment in their favor as a matter of law as to Plaintiff's remaining claims because Plaintiff failed to exhaust available remedies prior to filing suit. More specifically, Defendants assert:

> 1. Plaintiff did not exhaust available administrative remedies concerning Defendants Fregoso, Gastelo, Garcia, Arnold, McQuaid, and McComas because he never filed a grievance against them.
>
> 2. Plaintiff did not exhaust available administrative remedies against Defendant Blackwell, Douglas, and Dernoncourt for the claims concerning Soap, toothpowder, food, and prescriptions.

///

        3.       Plaintiff did not exhaust available administrative remedies concerning Defendants Neuschmid and Lee because he failed to appeal to the third level.

        4.       Plaintiff did not exhaust available administrative remedies concerning Defendant Sherman because he failed to file any health care grievance against her.

See id. at 13-20.

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory regardless of the relief sought. See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA [Prison Litigation Reform Act]; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted. The defendant bears burden of showing non-exhaustion in the first instance. See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014). If met, the plaintiff bears the burden of showing that the grievance process was not available, for example because it was thwarted, prolonged, or inadequate. See id.

The Supreme Court held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits. 548 U.S. 81, 89-96 (2006). Thus, exhaustion requires compliance with "deadlines and other critical procedural rules." Id. at 90. Partial compliance is not enough. See id. Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims. See id.

at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court." Id. at 94. When reviewing exhaustion under California prison regulations which have since been amended, the Ninth Circuit observed that, substantively, a grievance is sufficient if it "puts the prison on adequate notice of the problem for which the prisoner seeks redress. . . ." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (reviewing exhaustion under prior California regulations).  In order to provide adequate notice, however, the grievance must "provide the level of detail required by the prison's regulations." Sapp, 623 F.3d at 824.

Exhaustion is defined by the prison, not the PLRA. See Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016) (quoting Jones v. Bock, 549 U.S. 199, 218 (2007)). Until June 1, 2020, California allowed inmates to administratively appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs., tit. 15, § 3084.1(a); Munoz v. Cal. Dep't of Corrs., No. CV 18-10264-CJC (KS), 2020 WL 5199517, at *6 (C.D. Cal. July 24, 2020). CDCR used a three-step process for grievances. Id. (describing the former three-step process). CDCR also used the three-step process for health care grievances until September 1, 2017. Id. CDCR then adopted a new two-step procedure for inmate grievances (which was renumbered to its current section number in 2018). See Cal. Code Regs., tit. 15, § 3999.225–.230; see also Singh v. Nicolas, No. 18-cv-1852, 2019 WL 2142105 at *3 & nn. 1–4 (E.D. Cal. May 16, 2019) (discussing the restructured grievance procedure); Garrett v. Finander, 2019 WL 7879659, at *2–3 (C.D. Cal. Dec. 5, 2019) (describing the new grievance procedures). The first level of review is the institutional level of review. Cal. Code Regs., tit. 15, § 3999.228(a). The second level of review is the headquarters level of review. Cal. Code Regs., tit. 15, § 3999.230(a). The headquarters level is the final level of health care grievance review. Cal. Code Regs., tit. 15, § 3999.230(h). The headquarters level decision also exhausts administrative remedies. Id.

"[T]he PLRA exhaustion requirement is satisfied if prison officials decide a potentially procedurally flawed grievance on the merits." Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016). "[W]hen prison officials address the merits of a prisoner's grievance instead of enforcing a procedural bar, the state's interests in administrative exhaustion have been served." Id. at 657.

The PLRA mandates that the prisoner exhaust only such administrative remedies "as are available." Sapp, 623 F.3d at 823; see also Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir. 2010). A claim is not barred for failure to exhaust an administrative remedy that is effectively unavailable. See McBride v. Lopez, 807 F.3d 982, 986 (9th Cir. 2015). The Supreme Court has recognized at least three instances when a prison grievance process is effectively unavailable: (1) when the administrative process operates as a dead end because officers are unable or consistently unwilling to provide any relief; (2) when the administrative scheme is so opaque that it becomes incapable of use because no ordinary prisoner can discern or navigate it; and (3) when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. See Ross v. Blake, 578 U.S. 632 (2016).

Finally, an inmate has no obligation to further appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies. See Abney v. McGinnis, 380 F.3d 663, 669 (2d Cir. 2004); see also Harvey v. Jordan, 605 F.3d 681, 685 (9th Cir. 2010); Jackson v. Pletcher, 2013 U.S. Dist. LEXIS 93955, at *14-17 (E.D. Cal. July 2, 2013); Griffin v. Bal, 609 F. App'x 493, 493-94 (9th Cir. 2015). Nor is it the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised. See id. ("A prisoner who has not received promised relief is not required to file a new grievance where doing so may result in a never-ending cycle of exhaustion"). See Abney, 380 F.3d at 669.

///
///
///
///

A. **Whether Plaintiff Failed to File Grievances as to Defendants Fregoso, Gastelo, Garcia, Arnold, McQuaid, McComas, and Sherman**

Defendants argue that Plaintiff failed to exhaust available administrative remedies against Defendants Fregoso, Gastelo, Garcia, Arnold, McQuaid, McComas, and Sherman because he never filed any grievances as to his claims against these defendants. See id. at 13-14, 18-20.

1. Defendants Fregoso, Gastelo, Garcia, Arnold, McQuaid, and McComas

Defendants argue:

> It is undisputed that CSP-Solano and CDCR have a grievance process, and that Plaintiff availed himself of that process by submitting five appeals and exhausting two related to the instant action. (SUF No. 81.) However, despite his access to the grievance process, Plaintiff failed to file any grievance naming or otherwise identifying Defendants Fregoso, Gastelo, Garcia, Arnold, McQuaid, and McComas. (SUF Nos. 82, 84, 86, 89, 92.) Neither did he describe any conduct of these Defendants in his other five relevant grievances. (*Id*.) Because Plaintiff did not provide any available information that would assist the identification the Defendants and their involvements, Plaintiff failed to alert the prison officials to any problem. Thus, Plaintiff failed to exhaust the administrative remedies against Defendants Fregoso, Gastelo, Garcia, Arnold, McQuaid, and McComas as required under the California Code of Regulations, Title 15, sections 3084.2(a)(3). . . .

ECF No. 119-1, pg. 14.

Defendants' argument is persuasive. The Court has reviewed all of the grievances submitted into evidence and agrees that none shows any mention of Defendants Fregoso, Gastelo, Garcia, Arnold, McQuaid, and McComas or Plaintiff's claims against these defendants, who will be dismissed with prejudice. This is not a situation where the inmate has started the grievance process as to certain named defendants but did not complete it, either because he received a partially favorable result at the first or second level of review, or because prison officials made misrepresentations which effectively rendered the remainder of the exhaustion process unavailable. Rather, Plaintiff in this case did not begin the process of grieving conduct by Defendants Fregoso, Gastelo, Garcia, Arnold, McQuaid, or McComas. Clearly a process was available to Plaintiff because, as Defendants concede, Plaintiff was able to complete the exhaustion process as to some defendants and claims. Because the undisputed evidence shows

14

that Plaintiff never began the available grievance process as to Defendants Fregoso, Gastelo, Garcia, Arnold, McQuaid, or McComas, the Court finds that summary judgment in these defendants' favor based on non-exhaustion is appropriate.

### 2. Defendant Sherman

According to Defendants:

> CSP-Solano has a healthcare grievance process for inmates to grieve issues relating to their health care. (SUF No. 52.) Based on a review of Plaintiff's HCARTS for all healthcare grievances received after August 24, 2017, when Plaintiff was first transferred to CSP-Solano for out to court proceedings, Plaintiff did not submit a grievance involving Dr. Sherman or any of her involvements. (SUF Nos. 55, 57, 59, 62, 64, 67, 70.)
> The undisputed evidence establishes that Plaintiff had administrative remedies available to him because he filed seven healthcare grievances. (SUF No. 52.) Among other demands, Plaintiff requested to change his clinician, be enrolled in a fitness class, and continue his hypertension medications. (SUF Nos. 54, 56.) However, none of those healthcare grievances specifically identified Dr. Sherman or her involvement. (SUF Nos. 55, 57, 59, 62, 64, 67, 70.) Similarly, none of those healthcare grievances generally alleged that a psychologist made false statement about Plaintiff's mental health stability and cognitive functions, as he did in his Fifth Amended Complaint. (Id.) Accordingly, Plaintiff's healthcare grievances did not put prison officials on notice of the nature of his claim against Dr. Sherman before filing this lawsuit.
> In the alternative, while it was procedurally appropriate for Plaintiff to file a custody grievance, CSP-S-17-02574, against Dr. Sherman, alleging the same allegations as in the Fifth Amended Complaint, Plaintiff still failed to exhaust his administrative remedies. (SUF No. 94.) . . . . This grievance was screened out and rejected at the first level for failing to state sufficient facts, requesting a remedy beyond the scope of the appeal process, and failing to submit a staff complaint against medical staff using a 602 Health Care grievance and appeal. (SUF No. 93.) Plaintiff did not appeal this grievance to the second or third level; therefore, he did not exhaust this grievance. (SUF No. 94.) Accordingly, the undisputed facts show Plaintiff's grievance did not fulfill the requisite procedural and substantive requirements to exhaust his claim against Dr. Sherman before filing suit, and the Court should grant summary judgment in favor of Dr. Sherman as matter of law. . . .

ECF No. 119-1, pgs. 19-20.

Plaintiff argues that he was "induced" into abandoning his health care grievances against Defendant Sherman "based on an unfulfilled promise" that Plaintiff would be transferred to the California Medical Facility, which is an EOP facility. See ECF No. 133, pgs. 9-12. In support of this contention, Plaintiff attaches as Exhibit H to his opposition brief documents relating to an inmate grievance – Log No. CSP-S-17-02113 – which Plaintiff states he submitted

on August 31, 2017, and was resolved on September 11, 2017. See ECF No. 133, pgs. 116-119. This exhibit consists of two items: (1) a September 11, 2017, first-level response indicating that the grievance was being returned because "You have already been transferred;" and (2) a copy of a grievance signed by Plaintiff on August 31, 2017. Id. In the grievance, Plaintiff stated that his placement in administrative segregation at CSP-Solano, which does not provide EOP programming, violates the Coleman consent decree. See id. at 118. Plaintiff requested to be transferred to the California Men's Colony, an EOP facility. See id. The August 31, 2017, grievance at Exhibit H does not bear a log number. See id. It does, however, indicate that the grievance was rejected on September 11, 2017, per the "attached letter," presumably the other document included with Plaintiff's Exhibit H.

        The Court finds that a triable issue of fact remains as to whether Plaintiff exhausted available administrative remedies as to Defendant Sherman. The Court agrees with Defendants that the undisputed evidence before the Court shows that none of Plaintiff's health care grievances submitted by Plaintiff alleged that Defendant Sherman was responsible for Plaintiff's placement in a non-EOP administrative segregation unit at CSP-Solano. However, as Defendants also note, Plaintiff filed a non-health care grievance naming Defendant Sherman as responsible for his allegedly improperly placement in administrative segregation at CSP-Solano. Though Plaintiff did not pursue this grievance through the final level of review, Plaintiff has provided some evidence, by way of his declaration and exhibits attached to his opposition brief, suggesting that the grievance process may have been thwarted by prison officials who promised that Plaintiff would be transferred to an EOP facility. Specifically, on review of Plaintiff's grievance submitted in August 2017, Plaintiff was informed the following month that he would be transferred to an EOP facility, specifically the California Men's Colony. A jury could reasonably conclude based on this evidence that administrative remedies were made effectively unavailable to Plaintiff as to his claims against Defendant Sherman. For these reasons, the Court will deny Defendants' motion for summary adjudication as to Defendant Sherman.

///

///

**B.      Whether Plaintiff Exhausted Available Administrative Remedies for His Claim Concerning Soap, Toothpowder, Food, and Prescriptions as to Defendants Blackwell, Douglas, and Dernoncourt**

Defendants argue:

> Here, Plaintiff's claims should be similarly dismissed. Plaintiff properly exhausted two grievances against Defendants Blackwell, Douglas, and Dernoncourt (CSP-17-02872 and CSP--18-00315/CMC-18-00734). (SUF Nos. 109, 110.) However, absent from Plaintiff's 602 are any allegations that Defendant Blackwell denied him a medical prescription. Grievance CSP-17-02872 only alleged that Defendant Blackwell inappropriately housed Plaintiff in CSP-Solano's ASU in violation of Plaintiff's rights outlined in the *Coleman v. Brown,* 2:90-cv-00520, settlement. (SUF No. 82.) It did not mention Plaintiff's prescription of the selenium sulfide 2.5% topical lotion for his itchy scalp. (*Id.*) Nor did it bring up the issue of the itchy soap or rancid toothpowder. (*Id.*)
> 
> Similarly, Plaintiff's grievances never asserted that Defendant Douglas placed Plaintiff in CSP-Solano to receive poisonous food and that Defendant Blackwell, Douglas, and Dernoncourt assigned him to an ASU at a non-EOP facility to receive itchy soap and rancid toothpowder. In grievance CSP-S-18-00315/CMC-18-00734, Plaintiff argued that Defendant Douglas and Captain Dernoncourt improperly housed Plaintiff in the Administrative Segregation Unit at CSP-Solano. (SUF No. 84.) Theses grievances did not address poisonous food, itchy soap, or rancid toothpowder. (*Id.*)

ECF No. 119-1, pgs. 15-16.

Defendants' argument is persuasive. As Defendants note, while Plaintiff's grievances exhausted Plaintiff's claims against Defendants Blackwell, Douglas, and Dernoncourt for improperly housing him at the non-EOP administrative segregation unit at CSP-Solano, none of Plaintiff's grievances mentions Plaintiff's claims against these Defendants related to poisonous food, itchy soap, rancid toothpowder, or prescriptions for selenium sulfide. Plaintiff's allegation that his access to the grievance process was effectively thwarted by misrepresentations that Plaintiff would be transferred to an EOP facility does not change the Court's analysis as to Plaintiff's claims against Defendants Blackwell, Douglas, and Dernoncourt related to poisonous food, itchy soap, prescriptions for selenium sulfide, or rancid toothpowder. Nothing in the alleged misrepresentation regarding Plaintiff's EOP placement would have caused Plaintiff to believe these claims had been satisfactorily resolved. The Court finds that summary judgment is appropriate as to Plaintiff's claims against Defendants Blackwell, Douglas, and Dernoncourt related to poisonous food, itchy soap, prescriptions for selenium sulfide, or rancid toothpowder,

which will be dismissed with prejudice.

### C. Whether Plaintiff Completed the Administrative Exhaustion Process as to Defendants, Neuschmid, and Lee

Defendants argue that, while Plaintiff filed grievances concerning Defendants Neuschmid and Lee concerning his placement in the non-EOP administrative segregation unit at CSP-Solano, and while he received a favorable decision at the second level, he failed to pursue those grievances through the third and final level of review required for proper exhaustion. See ECF No. 119-1, pgs. 17-18. According to Defendants:

> Despite the favorable decision, Plaintiff failed to timely appeal any of these grievances to the third level. While Plaintiff attempted to submit CSP-S-18-01306 to the third level review on August 13, 2018, he had exceeded the thirty-day time limit by over three weeks. (SUF No. 111.) Therefore, Plaintiff did not exhaust his administrative remedies against Defendants Neuschmid and Lee because he failed to comply with the regulations and missed the third level of review. . . .

ECF No. 119-1, pg. 18.

Defendants' argument is unpersuasive. An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies, nor is it the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised. Here, Defendants concede that Plaintiff received a favorable result at the second level of review as to his claims against Defendnats, Neuschmid, and Lee. Plaintiff was, therefore, under no obligation to pursue the grievance to the third level of review, or file new grievances concerning whether the favorable result had actually been provided.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### IV.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiff's unopposed motion for leave to file a sur-reply brief, ECF No. 141, is granted.

2. Defendants' motion for summary adjudication, ECF No. 119, is granted in part and denied in part as explained herein.

3. Fregoso, Gastelo, Garcia, Arnold, McQuaid, and McComas are dismissed with prejudice, and the Clerk of the Court is directed to terminate these individuals as defendants to this action.

4. Plaintiff's claims related to poisonous food, itchy soap, rancid toothpowder, or prescriptions for selenium sulfide are dismissed with prejudice.

5. This action shall proceed on Plaintiff's claims against Defendants Sherman, Blackwell, Douglas, Dernoncourt, Neuschmid, and Lee for improperly housing Plaintiff in a non-EOP administrative segregation unit at CSP-Solano.

6. The schedule for this case, which had been vacated pending resolution of Defendants' motion for summary adjudication, is reinstated as follows consistent with the provisions of the Court's May 17, 2024, discovery and scheduling order at ECF No. 115:

    a. The parties may conduct discovery until August 25, 2026.

    b. Dispositive motions shall be filed not later than 120 days after the discovery cut-off date specified above.

Dated:  March 26, 2025

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE